IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BARBARA STEGMANN,

    Plaintiff,

vs.

Case No. 06-1159-JTM

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

MEMORANDUM AND ORDER

Plaintiff Barbara Stegmann has applied for Social Security supplemental security income benefits. Her application was denied by the ALJ, a decision affirmed by the Appeals Council on April 12,. 2006. There are three allegations of error by Stegmann. She contends that the ALJ erred in discounting her credibility. Second, she contends that the ALJ erred in determining that her migraines were not a severe impairment. Third, she contends that the ALJ posed an erroneous hypothetical question to the vocational expert (VE).

Plaintiff-claimant was born on September 13, 1961. She has has stated that she became disabled since January 1, 1994. At the hearing before the ALJ, Stegmann amended this claim by nearly a decade, stating that her disability began on August 6, 2002. She has a high-school level education. She has previously worked as a meat department clerk. She has cited a variety of ailments, including bipolar disorder, migraines, and three herniated discs in her back. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr.

18-23), and the brief of Stegmann (Dkt. No. 15, at 3-23), and set forth *seriatim* in the argument section of the Commissioner's response (Dkt. No. 19, at 2-12).

The ALJ concluded that Stegmann had severe impairments in her major depression and in her degenerative disc disorder. However, he concluded that Stegmann's impairments did not meet or exceed any listed impairment, and found she had the residual functional capacity (RFC) to perform

> the full range of all sedentary work, [but] is diminished in that she can occasionally bend, stoop, kneel, crouch and she requires the ability to alternate positions every 20-30 minutes. The claimant is moderately limited in her ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public, respond appropriately to changes in the work setting; and the ability to travel in unfamiliar places or use public transportation.

(Tr. 19). The ALJ found that Stegmann could perform sedentary jobs such as addresser, microfilmer, or surveillance systems monitor, and thus was not disabled.

Stegmann contends that the ALJ erred in discounting the credibility of her testimony, in violation of *Luna v. Bowen*, 834, F.2d 161 (10th Cir. 1987) and Social Security Ruling 96-7p. SSR 96-7p provides:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence of record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

1996 WL 374186 at *1 (Purpose, ¶ 4).

Under the Regulation, the ALJ is to consider, in addition to the objective medical evidence

2

> 1.[t]he individual's daily activities; 2.[t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4.[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5.[t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6.[a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7.[a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id*. at *3.

Stegmann argues that the ALJ erred in his credibility determination, because he reached his determination based upon an absence of supporting objective medical evidence, based upon a supposed conflict with her description of her daily activities even those activities are only light duty in nature, erred in failing to consider the side effects of medications, and substituted his own medical judgment.

The ALJ did not err in discounting Stegmann's subjective complaints. The assessment of a claimant's credibility is for the ALJ. *Hamilton v. Secretary of HHS*, 961 F.2d 1495, 1499 (10th Cir. 1992). This court will not substitute its judgment as to a claimant's credibility, where that finding is founded on substantial evidence. *See Casias v. Secretary of HHS*, 933 F.3d 799 (10th Cir. 1991). Here, the ALJ agreed that given Stegmann's medical history, she would and did experience some degree of pain; he concluded, however, that Stegmann's statements as to the degree of pain ("at an 8-9 level on a pain scale with 10 being the worst possible pain") were not credible. (Tr. 19). Contrary to the suggestion of the plaintiff, the ALJ did not premise his credibility assessment on an absence of objective medical evidence. In fact he agreed that her "medically determinable impairments could be reasonably expected to produce the alleged symptoms." (Tr. 21). What the

ALJ did was to assess plaintiff's credibility in the context of her own statements and her medical history.

A review of the ALJ's decision indicates his assessment of Stegmann's credibility was in accordance with applicable law. He accurately noted that Stegmann had not sought relief from pain prior to her consultative examination. (Tr. 19). Stegmann was involved in two motor vehicle accidents in 2003. However, she did not try to obtain regular treatment for pain until June of 2004. *Id.* The ALJ noted that there was no indication that Stegmann had previously sought pain relief at any low-income clinic. *Id.* He also noted that Stegmann had previously stopped taking medication for headaches, but in June of 2004 she had begun using a Lidoderm patch for her spinal pain, and reported that "the patches helped so much that she was feeling better than she had in 20 years and she also mentioned that she had not had a migraine headache since starting Topamax." *Id*. at 20.

The ALJ noted inconsistencies in Stegmann's descriptions of the frequencies of her migraine headaches. *Id.* He also noted inconsistencies in Stegmann's statements regarding how long she had been free from substance abuse. *Id.* at 21. He further noted that Stegmann had exaggerated her symptoms by claiming, contrary to the objective medical evidence, that she had three herniated discs. Although Stegmann complains that the ALJ failed to consider potential side effects of the medication, the only side effect she identifies in the record is drowsiness. Given that Stegmann had asserted that her pain was nearly at the level of "the worst possible pain," the ALJ did not err in considering the failure of Stegmann to take such medication into account in assessing her credibility. After summarizing Stegmann's medical history, the ALJ concluded:

> The evidence shows little treatment over time for the claimant's pain, and fairly recent treatment that by her own admission and by report of the neurologist has been extremely successful. The evidence calls into question how often and how much

>pain the claimant has actually suffered due to her inconsistent statements and long periods without taking medication.

*Id*. at 19.

The ALJ did not substitute his own medical judgment for the consulting medical authorities. The ALJ's RFC is in fact more restrictive than that suggested by either Dr. Vopat or Dr. Stockwell. The ALJ noted that his conclusions differed from those of the medical consultants, but expressly stated that this reflected both his access to medical findings not available to the consultants, and his ability to assess Stegmann's credibility. The ALJ is the fact finder with respect to a claimant's credibility, *Cooley v. Weinberger*, 518 F.2d 1151 (10th Cir. 1975), and the ALJ in the present case did not err in fulfilling that role.

Next, Stegmann argues that the ALJ erred in failing to determine that her migraines were a severe impairment. She contends that her treating physicians Dr. Detwiler and Dr. Swanson have diagnosed her as having severe migraines. Further, the consulting medical source, Dr. Holmes, also diagnosed her as having migraines.

The court finds no error in the ALJ's conclusion that Stegmann's migraine headaches did not constitute a severe impairment. In fact, the medical testimony is very limited. Dr. Detwiler merely stated in October of 2003 that Stegmann had had some migraine headaches, and that this was associated with her hypertension. (Tr. 206). He told her to continue with her medication. He did not describe the headaches as "severe."

Stegmann complained of migraine headaches to Dr. Swanson in June of 2004. He also did not diagnose "severe" migraines. Indeed, his actual diagnosis was quite limited, stating that

5

Stegmann's "[h]istory [is] certainly suggestive of migraine headaches, though the overall quality is somewhat unique. Certainly these are unilateral and respond quite well to treatment." (Tr. 314).

Given this medical history, and the ALJ's assessment of Stegmann's credibility, the court cannot find error in the conclusion that the migraine headaches are not a severe impairment.

Finally, Stegmann argues that the hypothetical posed to the VE was error, since it failed to accurately set forth her limitations. Specifically, she argues that the question was ambiguous, since the ALJ asked the VE to consider the claimant as having "moderate" limitations in mental functioning but without further defining the term. There was no error in the question. The ALJ specifically stated that the VE should assume that the claimant "has some limitation, but can meet the requirements" of the specified positions, and the VE then proceeded to answer by making specific reference to the mental demands of the respective positions. (Tr. 411). Counsel was present and voiced no objection to the question. The use of the term "moderate" did not appear to present any problem for either the VE or counsel, and the court finds no basis for concluding its use was reversible error.

IT IS ACCORDINGLY ORDERED this 9th day of August, 2007, that the decision of the Commissioner is hereby affirmed.

                                        s/ J. Thomas Marten
                                        J. THOMAS MARTEN, JUDGE